## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| SAMANTHA WATTS, on behalf of her child, CW, a minor, and SW, c/o Engel & Martin, LLC 4660 Duke Drive, Suite 101 Mason, Ohio  45040,<br><br>Plaintiffs,<br><br>v.<br><br>ST. JOHN CENTRAL ACADEMY 3625 Guernsey Street Bellaire, Ohio 43906 | Case No.<br><br>Judge:<br><br><br>COMPLAINT<br><br>AND<br><br>JURY DEMAND |

### INTRODUCTION

1. This is an action arising from SW's and CW's wrongful dismissal from St. John Central Academy. After already being admitted for the 2021-2022 schoolyear, SW and CW were dismissed without any reason or explanation.

2. This action also arises from the wrongful use of copyrighted materials developed by SW by the school.

### PARTIES

3. SW is a former student at St. John Central Academy.

   a. SW is an Ohio resident with a residence in [REDACTED].

   b. Plaintiff has paid a significant amount of money to St. John Central Academy in the expectation of receiving an education and, if she successfully completed her classwork, a degree.

1

    c. The disclosure of SW's identity will cause the student irreparable harm as this case involves education records protected from disclosure by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; 34 CFR Part 99.

4. CW is a former student at St. John Central Academy.

    a. CW is an Ohio resident with a residence in [REDACTED].

    b. Plaintiff has paid a significant amount of money to St. John Central Academy in the expectation of receiving an education and, if she successfully completed her classwork, a degree.

    c. The disclosure of CW's identity will cause the student irreparable harm as this case involves education records protected from disclosure by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; 34 CFR Part 99.

5. Samantha Watts is the legal guardian CW and is authorized to act on their behalf.

6. Defendant St. John Academy ("St. John") is a private high school in Bellaire, Ohio. St. John has a principal place of business at 3625 Guernsey Street Bellaire, Ohio 43906.

## JURISDICTION & VENUE

7. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

8. This court has subject matter jurisdiction over this matter pursuant to 17 U.S.C. § 501, et.sec., which provides remedies for copyright infringement.

9. In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiffs' state law claims.

10. Venue in this action is properly in the Southern District of Ohio because the events relevant to this action occurred primarily within the geographical confines of the Southern District of Ohio.

**FACTUAL ALLEGATIONS**

11. SW and CW attended St. John as students until their wrongful dismissal in June 2021. At the time, SW was entering her senior year of high school, while CW was entering her freshman year of high school.

12. Up to that point, SW and CW had been straight-A students.

13. SW maintained a 4.511 GPA and was on track to be valedictorian at St. John. She had been student council representative for her Freshman, Sophomore, and Junior years, and evidently was well liked and respected amongst her peers and teachers. On top of this, SW had earned 36 college credits and was nominated by Wright State University for the National Society of Leadership and success.

14. SW was able to accomplish all these things while suffering from an anxiety disorder.

15. CW, like SW, is academically gifted and has proven so throughout her time at St. John by maintaining an excellent GPA and taking courses above her grade level.

16. SW and CW both participated in various sports like volleyball, basketball, track, and e-sports.

17. Samantha, and her daughters SW and CW live under the poverty limit. Attending St. John with such success was both an honor and a chance for a better life for SW and CW.

18. In March 2019, Yaegel asked SW to design a new logo for St. John.

19. SW invested many uncompensated hours of drawing and edits, until her logo received the Board of Director's approval.

20. SW received no consideration for creation of her new logo.

21. SW registered her new logo with the United States Copyright Office. She received a Copyright Case No. 1-12141552741.

22. Subsequently, SW was asked to paint her new logo in the school's gymnasium, and St. John to this day uses her new logo on all official paperwork and promotional material with only very slight edits.

23. In November 2020, Vince Gianangeli was hired as principal at St. John.

24. Samantha, as well as her mother Barbara Priebe ("Barbara"), were employed at St. John until 2021.

25. In January 2021, Barbara, SW and CW's grandmother, got into a work-related argument with Gianangeli.

26. On January 13, 2021, Samantha was called into a meeting in which Barbara was reprimanded for her exchange with Gianangeli. Samantha was not informed why she was to attend this meeting.

27. Sometime later in January 2021, Samantha and SW met with the Board members. Samantha requested SW be allowed to drop one of her classes, as the teacher's inconsistent instructions had adverse effects on SW's already high anxiety levels.

28. At the end of the discussion, Vince Gianangeli yelled "Get out!" at Samantha in the presence of SW.

29. SW was not allowed to drop the class.

30. Sometime later in January 2021, Barbara was terminated from St. John.

31. In March or April 2021, Samantha reapplied SW and CW for the 2021-2022 school year at St. John.

32. With the school applications, because of living below the poverty line, Samantha also applied for the EdChoice Scholarship through the State of Ohio.

33. For the Scholarship to be approved, the school has to fill out paperwork that the student will be attending and is admitted to the school for the respective school year.

34. On May 11, 2021, the Scholarship for SW and CW was approved.

35. On May 28, 2021, the Board of Directors informed Samantha that her contract would not be renewed for the coming school year without an explanation.

36. Samantha was given only a few hours to clear her office and she was locked out of her school accounts almost immediately.

37. After her termination, Samantha was only able to receive her daughter's permanent records under much difficulty by Gianangeli and the Board of Directors.

38. On June 25, 2021, Gianangeli and Bryniarski issued a letter addressed to Samantha, stating that SW and CW "will not be accepted" for the 2021-2022 school year. The letter does not state a reason or explanation for the dismissal.

39. On July 14, 2021, Samantha tried to get an explanation for the dismissal from Gianangeli in a phone call and was dismissed.

40. Also on July 14, 2021, Samantha sent letters to Gianangeli, Brynarski, Grifiths, Liberator, Steele, Kapral and Yaegel and again to Gianangeli asking for a reason for the dismissal and again was denied any explanation.

41. On August 5, 2021, the undersigned attorney again requested an explanation for the dismissal from Gianangeli to no avail.

42. On September 7, 2021, Samantha requested an explanation for the dismissal from Yaegel to no avail.

43. In her letter, Samantha outlines how she was concerned that the dismissal was in connection with her and Barbara's employment terminations. Samantha also outlined her conflict with

Gianangeli in January 2021 and raised concerns that the dismissal and terminations were connected to this argument.

44. On September 29, 2021, the undersigned attorney again requested an explanation for the dismissal from s Gianangeli and Yaegel to no avail.

45. Sometime in October 2021, SW and CW were invited to St. John's homecoming by their friends enrolled at the school.

46. Upon entering the school premises, Gianangeli's wife stopped Plaintiffs and refused their entry.

47. Gianangeli returned to the school entrance within moments later with officers and tried to charge SW and CW with trespass. The involved police officer refused the charges.

48. Two days after the event, Samantha attempted to obtain the police report of the incident. The Chief informed her that there was no report, but that her and her daughters were not allowed to attend school-sponsored events. No explanation was given as to why Gianangeli decided to take this step.

49. Because of the actions of Defendant, SW and CW were forced to transfer to Bridgeport High School.

50. The transfer caused SW to lose her valedictorian honors she had worked so hard for.

51. Additionally, SW as well as CW lost the ability to continue their sports because of the transfer.

52. SW and CW have suffered severe emotional distress as well as serious threats to their future careers in academia and professionally. SW's anxiety has worsened as a result of the wrongful dismissal. SW and CW have been denied the benefits of education at their chosen school, damaged their academic reputations, and may affect their ability to enroll at other institutions of higher education. SW's and CW's damages include diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation,

6

humiliation, embarrassment, inconvenience, mental distress, and other compensatory damages.

## COUNT I – COPYRIGHT INFRINGEMENT

53. Plaintiffs restate each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

54. Yaegel asked SW to design a new logo for St. John.

55. SW produced an original, tangible artwork when she designed said new logo.

56. SW produced this artwork independently and creatively through many hours of work at home.

57. SW did not receive any compensation or consideration for producing said new logo.

58. SW registered said new logo at the United States Copyright Office.

59. The artwork for said new logo was sent to Yaegel through Samantha Watt's school email account.

60. SW published her work by showing the logo to St. John and painting it on the wall in the school's gymnasium.

61. St. John now displays this logo with only slight alterations onto all of its official documents without SW's authorization.

62. As a result of the above-described conduct by Defendant, SW has been damaged in an amount to be proven at trial or, alternatively, is entitled to recover from Defendant statutory damages plus attorneys' fees

## COUNT II – BREACH OF CONTRACT

63. Plaintiffs restate each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

64. Plaintiffs and Defendant St. John entered into a contract by which Defendant St. John offered admission to SW and CW on specified terms.

7

65. Plaintiffs accepted Defendant's offer and SW and CW attended St. John as students.

66. There was a mutual exchange of consideration for which Plaintiff attended St. John involving payments and expenditure of time as well as St. John making its services including educational opportunities available to Plaintiffs.

67. As part of the contract was the existence of policies set forth by St. John in the student handbook. As a condition of attending St. John, Plaintiffs and St. John were both expected to be bound by those policies. Included within those policies were regulations concerning a fair and impartial dismissal process.

68. These policies were part of the bargain between Plaintiff and St. John. Without agreeing to abide by those policies, Plaintiffs would not have been permitted to enter into a contract with St. John.

69. CW and SW had an expectation of continued enrollment as students and St. John due to their good standing and past payments to the school. CW and SW had a contractual right in their continuing education because their payment of tuition created an implied contract between them and St. John. Their enrollment in, and attendance of, classes at St. John created an expectation that they would be allowed to continue their course of study until they a degree from St. John, provided that they maintained satisfactory grades and complied with the school's rules and policies.

70. St. John breached the explicit and implied terms of the contract between the parties when Plaintiffs were not given an explanation or reasoning and were provided any other established proceeding in regard to the dismissal of SW and CW.

71. St. John breached the explicit and implied terms of the contract between the parties when Plaintiffs were not permitted to re-enroll despite being in good standing and complying with the school's rules and policies.

72. As a direct and proximate result of Defendant's actions, Plaintiffs have sustained and continue to sustain injuries and damages. Plaintiffs have been denied aspects of the benefits of education at their chosen school and have suffered damage to thei academic and professional reputations which may affect their ability to enroll at other institutions of higher education and to pursue a career.

### COUNT III – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

73. Plaintiffs restate each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

74. Plaintiff entered into a consumer transaction with Defendant St. John Academy for the purchase of services intended and represented to be subject to the strategic directions, goals, and values of St. John Academy.

75. Every consumer transaction imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.

76. Under the contract, Plaintiff has performed all the conditions required of them under the transaction.

77. Defendant's conduct, as alleged above, constitutes a breach of its duty of good faith and fair dealing, in that, among other things, it fraudulently induced Plaintiff to enroll at Defendant St. John Academy, which Defendant St. John Academy claimed would follow the standards of admission, education services and discipline procedure as outlined in the contract, when Defendant St. John Academy knew or should have known that the program would not actually do so.

78. Defendant St. John Academy knew or should have known that the Defendants' admission, education services and discipline procedures did not uphold the conditions required of them

      on their end of the contractual agreement, which resulted in low quality student services and unfair admissions and dismissal practices with less than adequate protection for its students.

79. As a direct and proximate result of Defendant's actions, Plaintiffs have sustained and continue to sustain injuries and damages.  Plaintiffs have been denied aspects of the benefits of education at their chosen school and have suffered damage to thei academic and professional reputations which may affect their ability to enroll at other institutions of higher education and to pursue a career.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

*Wherefore*, Plaintiffs seeks the following relief from the Court:

- Judgment in favor of SW and CW on all counts.
- A Permanent Injunction prohibiting further unlawful use of Plaintiff's copyrighted material.
- An award of damages in an amount to be determined at trial; and
- Court costs and other reasonable expenses incurred in maintaining this action, including reasonable attorney's fees as permitted by law.

Respectfully submitted,

/s/ Joshua Engel
Keith Altman, Esq.  (*pro hac vice* to be applied for)
The Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com

Joshua Adam Engel (0075769)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com